UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.

**CHRISTA HILL**,

      Plaintiff,

v.

**PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES**,

      Defendant.

---

**COMPLAINT FOR DAMAGES WITH JURY DEMAND**

---

Plaintiff Christa Hill ("Hill"), through counsel, for her *Complaint for Damages* against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") (the "Complaint"), states as follows:

**WHY HILL BRINGS THIS CASE**

1. Hill has been attempting to obtain a complete and accurate accounting on her mortgage loan in order to refinance her mortgage loan. PHH has provided Hill with inaccurate payoff statements and refuses to provide further information when requested, as PHH improperly relies on a non-existent active litigation exception. Hill cannot refinance her mortgage loan without information that is in PHH's sole possession and has been forced to incur attorneys' fees and costs in order to attempt to correct this issue and obtain the information to which she is entitled to by federal law and regulations.

1

## PARTIES, JURISDICTION, AND VENUE

2. Hill and her son Alexander J. Hill (collectively, the "Borrowers") are the owners of residential real property, located at and commonly known as 13569 W. Purdue Ave., Morrison, CO 80465 (the "Home").

3. Hill currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

4. PHH is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 1 Mortgage Way, Mount Laurel, NJ 08054.

5. PHH is the servicer of a note executed by Hill (the "Note") and of a deed of trust on the Home that secures said note (the "DOT") (collectively, the "Loan").

6. Non-party TIAA Bank f/k/a Everbank ("TIAA") is the owner of the Loan.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).

8. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

10. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

11. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

14. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

15. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16. Hill asserts claims for relief against PHH for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

17. Hill has a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

18. Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).

19. Hill has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

20. On or about June 23, 2015, the Borrowers obtained the Loan from non-party Summit Mortgage Corporation ("Summit"). On or about March 21, 2017, Summit transferred the servicing of the Loan to Ocwen Loan Servicing, LLC ("Ocwen"). PHH became the servicer of the Loan on or about June 2, 2019 following the merger of Ocwen and PHH in 2018.

21. On or about October 1, 2016, the Borrowers encountered financial difficulty and were unable to make timely payments pursuant to the terms of the Loan.

22. On June 30, 2017, Alexander J. Hill filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of Colorado, Case No. 17-16114-JGR (the "Bankruptcy Matter").

23. The Borrowers continued to make their monthly mortgage payments during the pendency of the Bankruptcy Matter. A copy of the Borrowers' Payment History is attached as **Exhibit 1**.

24. On November 2, 2017, Ocwen filed Proof of Claim 14-1 in the Bankruptcy Matter, wherein Ocwen claimed that $23,137.12 was necessary to cure the default at that time.

25. On or about June 4, 2019, PHH provided the Borrowers with a Final Escrow Account Disclosure Statement which set their monthly mortgage payment at $2,165.48. A copy of the 2019 Final Escrow Account Disclosure Statement is attached as **Exhibit 2**.

4

26. On or about February 10, 2020, PHH approved the Loan to enter into a Trial Period Plan ("TPP") under the Home Affordable Modification Program (HAMP) that required three trial payments in the amount of $2,036.23 in the months of March, April, and May 2020. A copy of the TPP is attached as **Exhibit 3**.

27. The Borrowers paid the three trial payments, which PHH placed into a suspense account. Through the Borrowers' mortgage statements, PHH began to claim that the Borrowers were a month behind while acknowledging the existence of a varying amount in a suspense account. Copies of the Borrowers' mortgage statements are attached as **Exhibit 4**.

28. On or about February 21, 2020, PHH provided the Borrowers with an Off-Scheduled Escrow Statement which set their monthly mortgage payment at $2,123.85, including an escrow payment of $570.49, effective May 1, 2020. A copy of the 2020 Off-Scheduled Escrow Statement is attached as **Exhibit 5**.

29. Sometime before July 17, 2020, Hill sent a request for information pursuant to 12 C.F.R. § 1024.36 ("RFI #1"), seeking information concerning the Loan, including a transaction history of the Loan, to PHH at the address designated by PHH for receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") via Certified Mail.

30. On or about July 17, 2020, PHH sent correspondence to Hill stating, "Due to the active bankruptcy status of the account, we request the accountholder's attorney to contact the PHH bankruptcy attorney for the payment history." A copy of the July 17, 2020 response is attached as **Exhibit 6**.

31. On or about August 4, 2020, PHH sent a payoff quote to Hill wherein PHH stated that the Loan was (1) due and owing for the February 1, 2020 payment; (2) overdue for interest

payments in the amount of $7,267.94; and, (3) overdue for escrow payments in the amount of $5,280.89 ("Payoff Quote #1"). A copy of Payoff Quote #1 is attached as **Exhibit 7**.

32.     On or about August 13, 2020, PHH sent a second payoff quote to Hill wherein PHH stated that the Loan was (1) due and owing for the February 1, 2020 payment; (2) overdue for interest payments in the amount of $7,765.93; and, (3) overdue for escrow payments in the amount of $5,469.19 ("Payoff Quote #2"). A copy of Payoff Quote #2 is attached as **Exhibit 8**.

33.     The payoff quotes' false statements are contradicted by the Borrowers' Payment History and PHH's 2020 Customer Account Activity Statement. A copy of PHH's 2020 Customer Account Activity Statement is attached as **Exhibit 9**.

34.     On or about August 24, 2020, PHH sent a second correspondence to Hill relying on the non-existent active litigation exception. A copy of the August 24, 2020 response is attached as **Exhibit 10**.

35.     Hill, through counsel, sent correspondence dated August 24, 2020 and captioned "Request for information pursuant to 12 C.F.R. § 1026.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" ("RFI #2") to PHH at the Designated Address. A copy of RFI #2 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com) is attached as **Exhibit 11**.

36.     Through RFI #2, Hill requested information related to the Loan, specifically:

  a. The name, address, and contact information for the current owner or assignee of the Loan;

  b. The identity of and address for the master services of the Loan;

  c. The identity of and address for the current servicer of the Loan; and,

  d. An accurate statement of the total outstanding balance on the Loan;

*See*, Exhibit 11.

6

37. Hill, through counsel, sent correspondence dated August 24, 2020 and captioned "Request for information pursuant to 12 C.F.R. § 1026.36" ("RFI #3") to PHH at the Designated Address. A copy of RFI #3 with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 12**.

38. Through RFI #3, Hill requested information related to the Loan, specifically:

    a. An exact reproduction of the life of loan mortgage transaction history;

    b. Copies of servicing notes;

    c. Copies of broker's price opinions;

    d. A copy of the original Note;

    e. Copies of the last two (2) escrow analyses;

    f. An accurate reinstatement quote;

    g. Dates upon which PHH received loss mitigation applications;

    h. Written correspondence relating to loss mitigation;

    i. Dates upon which PHH received executed loss mitigation agreements; and,

    j. Dates upon which PHH received appeals of loss mitigation eligibility.

*See*, Exhibit 12.

39. PHH received RFI #2 and RFI #3 on August 28, 2020. See, Exhibits 11-12.

40. On or about September 5, 2020, PHH sent a third payoff quote to Hill wherein PHH stated that the Loan was (1) due and owing for the March 1, 2020 payment; (2) overdue for interest payments in the amount of $7,519.59; (3) overdue for escrow payments in the amount of $5,087.00; and, (4) charged a $87.00 "Demand Statement Fee" ("Payoff Quote #3"). A copy of Payoff Quote #3 is attached as **Exhibit 13**.

41. On or about September 9, 2020, PHH sent a third correspondence to Hill relying on the non-existent active litigation exception (the "Response to RFI #3"). In the Response to RFI #3, PHH refused to provide the "PHH transaction history" and only provided Ocwen's loan history up to June 2, 2019. A copy of the Response to RFI #3 is attached as **Exhibit 14**.

42. Hill sent a notice of error dated September 29, 2020 (the "NOE") to PHH at the Designated Address. A copy of the NOE with tracking information from the website for the USPS (www.usps.com) is attached as **Exhibit 15**.

43. Through the NOE, Hill alleged that PHH committed the following errors in the servicing of the Loan:

   a. Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to requests for information;

   b. Errors pursuant to 12 C.F.R. § 1024.36(b)(2) for failing to properly apply accepted payments;

   c. Errors pursuant to 12 C.F.R. § 1024.36(b)(3) for failing to timely credit accepted payments;

   d. Errors pursuant to 12 C.F.R. § 1024.35(b)(11) for wrongfully declaring that the Borrowers were delinquent on their post-petition payments; and,

   e. Errors pursuant to 12 C.F.R. § 1024.35(b)(6) for failing to provide accurate payoff statements.

*See*, Exhibit 15.

44. In the NOE, Hill carefully explains to PHH that there is no such active litigation exception to 12 C.F.R. § 1024.36. *See*, Exhibit 15.

45. On or about October 8, 2020, PHH sent a fourth payoff quote to Hill wherein PHH stated that the Loan was (1) due and owing for the April 1, 2020 payment; (2) overdue for interest payments in the amount of $8,214.02; (3) overdue for escrow payments in the amount of

8

$4,704.81; and, (4) charged a $87.00 "Demand Statement Fee" ("Payoff Quote #4"). A copy of Payoff Quote #4 is attached as **Exhibit 16**.

46. On or about October 13, 2020, PHH sent correspondence to Hill in response to the NOE that failed to substantively address the errors asserted by the NOE (the "Response to the NOE"). A copy of the Response to the NOE is attached as **Exhibit 17**.

## DAMAGES INCURRED BY AND IMPACT UPON HILL

47. Throughout this entire ordeal, Hill has simply wanted to be able to enjoy the benefits of refinancing the Loan, but PHH's actions unnecessarily delayed the refinancing process. As of March 10, 2021, PHH continues to refuse to correct the information contained in its payoff quotes and provide Hill with a complete and accurate loan transaction history. As a result of PHH's actions, Hill cannot move forward with refinancing the Loan.

48. PHH's actions directly and proximately caused the following actual damages to Hill:

   a. PHH refuses to provide Hill with information related to the Loan to which she is entitled, namely a complete and accurate transaction history;

   b. PHH refuses to issue a correct payoff statement despite acknowledging that the Borrowers are not behind on their post-petition payments;

   c. PHH refuses to properly apply and/or credit payments made towards the Loan;

   d. PHH has assessed improper fees and/or charges to the Loan;

   e. Hill had to retain and pay legal counsel to submit the requests for information and notices of error to PHH, pay postage costs for the mailing of those documents, and review the responses to those documents;

   f. PHH's actions have caused Hill to experience extreme emotional distress that has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

### PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY PHH

49. PHH's actions are part of a pattern and practice of behavior in violation of Hill's rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

50. As of the filing of this Complaint, PHH has had Seven Hundred Forty Four (744) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

51. Hill has reviewed the CFPB's consumer complaint database and has identified other similar alleged RESPA violations by PHH against other borrowers. In particular, Hill has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 18**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that PHH has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

### COUNT ONE:
### VIOLATIONS 15 U.S.C. § 1692, *et seq.*

52. Hill restates and incorporates all of the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

53. Hill is a "consumer" as she is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

54. The Loan is a "debt" as it is an obligation or alleged obligation of Hill to pay money arising out of a transaction primarily for personal, family, or household purposes- the purchase of the Home. 15 U.S.C. § 1692a(5).

55. PHH is a "debt collector" because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as TIAA. 15 U.S.C. § 1692a(6).

56. When PHH (as Ocwen) acquired the servicing rights to the Loan, Hill was in default of her obligations thereunder. *See*, 15 U.S.C. § 1692a(6)(F)(iii). PHH, through its payoff statements, has treated the Loan as if it was in default.

57. The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA examples of conduct that violate the provision, such as prohibiting false representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A)) and the use of any false representation or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

58. PHH violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) by falsely representing in the Payoff Quote #1, Payoff Quote #2, Payoff Quote #3, and Payoff Quote #4 that the Loan was past due for post-petition payments. *See*, Exhibits 7, 8, 13, and 16.

59. PHH violated 15 U.S.C. § 1692e, 1692e(2)(A), and 1692e(1) by falsely representing in monthly mortgage statements that Hill was past due for post-petition payments. *See*, Exhibit 4.

60. PHH's false statements are contradicted by the Borrowers' Payment History, the Response to the NOE, and PHH's 2020 Customer Account Activity Statement. *See*, Exhibits 1, 9, and 17.

61. PHH's false representations have caused Hill to suffer actual damages, as outlined, *supra*, at ¶ 48. If PHH had properly accounted for Hill's post-petition payments it would not have made the false representations which required Hill to seek information and attempt to correct errors.

62. PHH's pattern of making false representations on a monthly basis through the mortgage statements and failing to provide an accurate payoff statement directly and proximately caused Hill to suffer extreme emotional distress as she was prevented from achieving her ultimate goal - refinancing the Loan.

63. As a result of PHH's actions, PHH is liable to Hill for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

64. Additionally, Hill requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## COUNT TWO:
## VIOLATIONS 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)

### (Failure to properly respond to RFI #1 and RFI #3)

65. Hill restates and incorporates all of the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

66. 12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

67. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

68. A servicer must respond to a request for information by:

> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
>
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

69. Furthermore, a servicer must properly respond to a request for information within the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

70. "A servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be

appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

71.  There are very limited circumstances where a mortgage servicer is not required to provide information related to a mortgage loan. *See*, 12 C.F.R. § 1024.36(f)(1).

72.  Absent from the regulation is any exception for pending litigation, therefore, PHH is not permitted to ignore its responsibilities under RESPA by wrongfully asserting an active litigation exception. *See Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043 (PKC) (LB), 2020 U.S. Dist. LEXIS 71059, at *19 (E.D.N.Y. Apr. 22, 2020) ("RESPA does not contain any pending-litigation exception that allows Defendant to avoid its obligation to sufficiently respond to Plaintiff's QWRs."); *Schmidt v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 174748, at *6 (D. N.J. Oct. 8, 2019) ("Once again, the Court agrees with Judge Falk's decision not to read a 'litigation exception' into the statute.").

73.  RFI #1 meets the definition of a request for information as defined by 12 C.F.R. § 1024.36(a) because it contains Hill's name, loan number, property address, and requests information related to the Loan.

74.  Hill sent RFI #1 to PHH at the Designated Address and PHH received RFI #1 at the Designated Address.

75.  PHH was required to provide written correspondence to Hill in response to the information requested through RFI #1 within thirty (30) business days of their receipt of RFI #1. *See*, 12 C.F.R. § 1024.36(d)(2)(i)(B).

76.  PHH did not send any correspondence containing or otherwise consisting of a substantive response to RFI #1 to Hill within thirty (30) business days of receipt of RFI #1. PHH

14

instead relied on a non-existent active litigation exception and directed Hill to contact PHH's bankruptcy counsel. *See*, Exhibit 6.

77. RFI #3 meets the definition of a request for information as defined by 12 C.F.R. § 1024.36(a) because it contains Hill's name, loan number, property address, and requests information related to the Loan. *See*, Exhibit 12.

78. Hill sent RFI #3 to PHH at the Designated Address and PHH received RFI #3 at the Designated Address. *See*, Exhibit 12.

79. PHH was required to provide written correspondence to Hill in response to the information requested through RFI #3 within thirty (30) business days of its receipt of RFI #1. *See*, 12 C.F.R. § 1024.36(d)(2)(i)(B).

80. PHH did not send any correspondence containing or otherwise consisting of a substantive response to RFI #3 to Hill within thirty (30) business days of receipt of RFI #3. PHH instead relied on a non-existent active litigation exception and directed Hill to contact PHH's bankruptcy counsel. *See*, Exhibit 14.

81. PHH's actions in failing to properly respond to RFI #1 and RFI #3 are in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k).

82. PHH's actions in failing to timely respond to RFI #1 and RFI #3 caused Hill to suffer actual damages as further outlined, *supra*, at ¶ 48, specifically including legal fees and costs to have counsel prepare and send the NOE to PHH, which would not have been necessary but for PHH's failure to provide information that she is entitled to possess.

83. PHH's actions are part of a pattern or practice of behavior in conscious disregard for Hill's rights.

84. As a result of PHH's actions, PHH is liable to Hill for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

85. Additionally, Hill requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE:**
**VIOLATIONS 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)**

**(Failure to properly respond to the NOE)**

86. Hill restates and incorporates all of the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

87. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

88. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

89. A servicer must respond to a notice of error by either:

   (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

   (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and

16

>> contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

90. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
>
> (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

91. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

92. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

93. The NOE constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 15.

94. Hill sent the NOE to PHH at the Designated Address and PHH received the NOE at such address. *See*, Exhibit 15.

17

95. Through the NOE, Hill alleged that PHH committed the following errors in the servicing of the Loan:

   a. Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to requests for information;

   b. Errors pursuant to 12 C.F.R. § 1024.36(b)(2) for failing to properly apply accepted payments;

   c. Errors pursuant to 12 C.F.R. § 1024.36(b)(3) for failing to timely credit accepted payments;

   d. Errors pursuant to 12 C.F.R. § 1024.35(b)(11) for wrongfully declaring that the Borrowers were delinquent on their post-petition payments; and,

   e. Errors pursuant to 12 C.F.R. § 1024.35(b)(6) for failing to provide accurate payoff statements.

*See*, Exhibit 15.

96. In the NOE, Hill carefully explains to PHH that there is no such active litigation exception to 12 C.F.R. § 1024.36. *See*, Exhibit 15; *see also Izmirligil*, 2020 U.S. Dist. LEXIS 71059, at *19; *Schmidt*, 2019 U.S. Dist. LEXIS 174748, at *6.

97. In the Response to the NOE, PHH:

   a. Makes the conclusory and unsupported statement that "[y]our concerns pertaining to the Request for Information was [sic] addressed correctly on September 9, 2020";

   b. Correctly claims that the Loan is due and owing for the October 1, 2020 post-petition payment, but attaches a copy of Payoff Quote #4 wherein PHH falsely states that the Loan is due and owing for April 1, 2020; and,

   c. Once again relies on the non-existent active litigation exception to refuse to "discuss any concerns raised".

*See*, Exhibit 17.

98. The Response to the NOE indicates that PHH performed little to no investigation into the errors asserted by the NOE, let alone a reasonable investigation. PHH merely refers to the

Response to RFI #3 and ignores that there is no legal basis for an active litigation exception. PHH refuses to correct inaccuracies in its payoff statements when it is well aware that the Borrowers are current on their post-petition payments.

99. The Response to the NOE did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as PHH did not admit that any errors occurred as alleged in the NOE.

100. The Response to the NOE did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of the Response to the NOE that PHH did not perform a reasonable investigation into the errors alleged through the NOE prior to determining that no such errors occurred.

101. PHH's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOE constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Hill has suffered actual damages as detailed, *supra*, at ¶ 48.

102. PHH's actions are part of a pattern or practice of behavior in conscious disregard for Hill's rights.

103. As a result of PHH's actions, PHH is liable to Hill for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

104. Additionally, Hill requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Christa Hill respectfully requests that this Court enter an Order granting Judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services as follows:

A. For an award of actual damages in the amount to be determined at trial, as applicable, as to all of the allegations contained in Counts One, Two, and Three;

B. For an award of One Thousand Dollars ($1,000.00) for the violations of the FDCPA, as to all of the allegations contained in Counts Two and Three;

C. For an award of Two Thousand Dollars ($2,000.00) for each of the at least three violations of RESPA or at least $6,000.00 total, as to all of the allegations contained in Counts Two and Three;

D. For an award of Hill's reasonable attorneys' fees and costs for the violations contained in Counts One, Two, and Three; and

E. For all other relief this Court may deem just and proper.

## JURY DEMAND

Plaintiff Christa Hill hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

*/s/ Brian D. Flick*
Brian D. Flick (OH #0081605)
Marc E. Dann (OH #0039425)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

Elle Tauer, Esq. (CO Bar Reg. 34247)
3i Law
2000 S. Colorado Blvd.
Tower 1, Ste. 10000
Denver, CO 80222
Telephone: (303) 245-2162
jtauer@3ilawfirm.com

*Counsel for Plaintiff Christa Hill*